IN THE DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED FOR DOCKETING

04 SEP -3 PM 1:38

U.S. DISTRICT COURT

| | |
|---|---|
| THEOPHILUS GREEN, ASSOCIATED PSYCHOLOGICAL SERVICES, PSYCHOLOGICAL SOLUTIONS, P.C. AND RELATED CLIENTS AND STAFF, <br><br> PLAINTIFFS, <br><br> vs. <br><br> FRANCIS Cardinal GEORGE, individually and MEMBER U.S. CONFERENCE OF CATHOLIC BISHOPS, INSPECTOR GENERAL, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JIM RYAN AND LISA MADIGAN, individually, and as ILLINOIS ATTORNEY GENERAL, FERNANDO GRILLO, individually as SECRETARY, ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, BRYAN SAMUELS ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, ILLINOIS DEPARTMENT OF INSURANCE DOSIA STRONG HILL, SECRETARY, WISCONSIN DEPARTMENT OF PROFESSIONAL REGULATION LISA R. HAYES, DIRECTOR INDIANA DEPARTMENT OF HEALTH CARE LICENSING, HEALTH CARE SERVICE CORPORATION, d/b/a BLUE CROSS BLUE SHIELD, JUDY HALL, individually and as Executive Director, NATIONAL REGISTER, <br> DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

04C 5813

JUDGE MAROVICH

MAGISTRATE JUDGE NOLAN

**DOCKETED**
SEP 0 7 2004

## COMPLAINT AT LAW

Now comes the Plaintiff, Theophilus Green et al, pro se, in the above titled action

complaining of the defendants, Francis Joseph George, individually and Member, U.S.

Conference of Catholic Bishops, U.S. Conference of Catholic Bishops, Msgr. William P. Fay,

General Secretary, Inspector General, U.S. Department of Health And Human Services, Jim Ryan

and Lisa Madigan, individually, and as Illinois Attorney General, Fernando Grillo, individually, and as Secretary, Illinois Department of Financial Professional Regulation, Bryan Samuels, individually and as Director, Illinois Department of Children And Family Services, Deidre K. Manna, Illinois Department of Insurance Director, Dosia Strong Hill, individually and as Secretary Wisconsin Department of Professional Regulation Lisa R. Hayes, individually and as Director, Indiana Health Professional Bureau, Ray McCaskey, individually, and as Chairman, Health Care Service Corporation, d/b/a Blue Cross Blue Shield, Judy Hall, individually and as Executive Director National Register, and for his cause of action he states as follows:

1. That this Court has jurisdiction over the subject matter and the parties hereto.

2. The U.S. Conference of Bishops, (hereafter USCCB) is the governing body of the Catholic faith in the United States which reported to the Vatican in Rome. In June 2002, USCCB confirm unreported cases of child sexual abuse, which were later documented back 50 years.

3. Francis Cardinal Joseph George is the Chief Executive Officer of the Chicago Archdiocese for the Catholic church and a member of the U.S. Conference of Bishops whose policies govern his actions.

4. The Inspector General, is the legal administrative and enforcement arm of the U.S. Department Of Health And Human Services

5. At the time the events complained of herein began, the plaintiff, Theophilus Green, was a resident of Cook County, Illinois, and licensed to practice clinical psychology by the Illinois Department of Professional Regulation.

5

6.  Theophilus Green, is also president of Associated Psychological Services, and Psychological Solutions, P.C. and brings these actions jus tertii, as the psychologist of record for related clients and employer of record of related staff whose rights would be diluted without the plaintiff's assertion of their rights.

7.  Bryan Samuels, is director of the Illinois Department of Children and Family Services.

8.  Deidre K. Manna, acting director, the Illinois Department of Professional Regulation (hereinafter referred to as IDPR) was authorized in part to prosecute alleged violations of the Illinois Psychology Licensing Act and at all times relevant, Fernando Grillo was director of IDPR.

9.  Ray McCaskey, is Chairman of Health Care Service Corporation, d/b/a Blue Cross Blue Shield (hereafter referred to as HCSC) is an organization licensed to provide payment for mental health benefits due policy holders.

10. All times relevant, Dosia Strong Hill, was director of the Wisconsin Department of Professional Regulations.

11. The prosecutions division of the Wisconsin Department of Professional Regulation (hereafter referred to as WDPR) was authorized in part to prosecute alleged violations of the Wisconsin Psychology Licensing Act

12. All times relevant, Lisa R. Hayes was director of the Indiana Department of Healthcare Professions.

13. The prosecutions division of the Indiana Department of Healthcare Professions, (hereafter referred to as IDHP) was authorized in part to prosecute alleged violations of the Indiana Department of Healthcare Professions Licensing Act.

6

14.    Judy Hall is executive director of the National Register

15.    Unknown conspirators are persons known and unknown who had knowledge of the

conspiracy alleged and failed to act to defeat it.

16.    Plaintiff brings this action for redress of violations of his civil rights pursuant to 42

USC 1983 and 42 USC 1985. At all times relevant hereto there was in full for and

effect 42 USC 1981 which provided in pertinent part as follows:

"(a)    All persons within the jurisdiction of the United States shall have the same
right in every State and Territory to make and enforce contracts, to sue, be
parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white
citizens . . .".

17.    This Court has jurisdiction to redress violations of 42 USC 1981 pursuant to 42

USC 1983, 28 USC 1343(3) and 28 USC 1343 (4) and Chapter 1986 conferring

original jurisdiction upon this Court of any civil action to recover damages or to

secure equitable relief under any Act of Congress providing for the protection of

civil rights.

FACTS

18.    Theophilus Green, Psy.D. is an American of African descent, a non-Catholic and a

resident of Illinois and this lack of Catholicism was known to relevant members of

the Archdiocese of Chicago and the USCCB.

19.    In June, 1993, the plaintiff filed a mandated reporter of Child Abuse report in

compliance with the Abused and Neglected Child Reporting Act (325 ILCS) That

report resulted in a retaliatory professional complaint to IDPR and given a number

7

of 93-586.. According to IDPR policy, the prefix, 93, is the year of occurrence of all complaints

20. Plaintiff Green testified at Allen Piening's hearing at the IDPR Chicago office.

21. On October 24, 1996, the IDPR filed a complaint against Theophilus Green with the IDPR, without a complaining witness, evidence of patient harm or cause. Said complaint case bore the docket number 93-5687 which was the docket number of a previously dismissed matter relating to allegations alleged to have occurred three years before the filing of the complaint. The complaint filed in October, 1996 was retaliatory for unfavorable testimony in the Piening hearing.

22. The events alleged in the complaint filed in 1996 against Dr. Green concerned information plaintiff furnished concerning supervision of Allen Piening between 1983 and 1986, and followed a record threat to influence Dr. Green's testimony by IDPR prosecutors.

23. IDPR knew that plaintiff, Dr. Green was not an Illinois licensed clinical psychologist at the time of supervision and therefore expressly declined to consider the information furnished by Theophilus Green in connection with Allen Piening's application to the IDPR for a license to practice clinical psychology. No official decisions were made on documentation provided by Dr. Green, no attempts to clarify, ratify or explain that denial was ever transmitted to Dr. Green.

24. Plaintiff, Dr. Green was the only American of African descent who provided information regarding Allen Piening. However, the plaintiff was not the only person who provided information in connection with Allen Piening's application.

8

25. Other Caucasian psychologists submitted information to the IDPR in relation to Allen Piening's application for licensure as a clinical psychologist and although the information provided by the Caucasian psychologists was insufficient or not in the amount or frequency required by the IDPR rules, the Caucasian psychologists were not prosecuted by IDPR prosecutors Marian Benden, the chief of prosecution of the IDPR nor Michael Palermo her legal co-counsel.

26. At the time IDPR knew that the information provided by the Caucasian psychologists was insufficient as to the intensity of the supervision or the activity supervised was not of the type for which credit could be given.

27. Plaintiff was the only African-American witness that testified at Allen Piening's hearing. He was also the only one whose license status was identified as "unencumbered" during the proceeding.

28. Following a motion for rehearing which was denied, Nikki Zollar, director of IDPR approved the suspension of the Plaintiff's license September 28, 1998.

29. Despite numerous contacts with the Clerk of the Court for IDPR, that agency has yet responded to verbal, written and formal requests for rehearing or reinstatement made to the IDPR Clerk of the Court. The most recent being June, 2003.

30. Associated Psychological Services and its staff and patients suffered by the unilateral withholding of client benefits and the damage to the reputation of Theophilus Green through the suspension and revocation of his license.

28. Psychological Solutions, P.C. and its staff and patients have suffered by the withholding of client benefits and the damage to the reputation of Theophilus Green through the suspension and revocation of his license.

9

29. HCSC is a health insurance company licensed to do business in Illinois under the name Blue Cross Blue Shield and Ray McCaskey is its Chairman. HCSC was sued by the U.S. Justice Department and returned over $6 billion dollars in Medicare-Medicaid fraud during McCaskey's term as Chairman. HCSC requires of all psychologists be licensed in Illinois to receive reimbursement, by a department whose chief enforcement officer was Defendant Benden.

30. WDPR knowingly violated Dr. Green's constitutional protections against double jeopardy following specific requests from Mary Ann Benden who knowingly withheld crucial information during more than four hours of telephone calls to revoke his license on information provided in Illinois. Dosia Strong Hill is the current Secretary and upheld the "revocation of the plaintiff's licensure in Wisconsin following suspension in Illinois for the same offense.

31. Indiana Health Professionals Bureau violated Dr. Green's constitutional protections against double jeopardy following specific requests from Mary Ann Benden who knowingly withheld crucial information during more than two hours of telephone calls to suspend his license for sixty years on information provided in Illinois. Lisa R. Hayes is the current Director of IHPB and upheld the "suspension of Dr. Green's license for "sixty years" in Wisconsin following suspension in Illinois for the same offense.

32. The Inspector General suspends all federal Medicare and Medicaid licenses following state action. As Dr. Green faced more severe in other states for the same offense, and as IDPR has failed to respond to any requests for rehearing or

reinstatement, Dr. Green's Medicare and Medicaid privileges are permanently terminated.

33.   Under current interstate agreements and licensure procedures, no other state will grant a license to Dr. Green until all claims in Illinois are addressed. However, as Indiana has suspended the plaintiff's license for "sixty years" even if Dr. Green were to meet the standard to reverse his revocation in Wisconsin, he would be well over 100 before his licensure privileges would be returned and he would be permitted under federal law to conduct Medicare-Medicaid services.

34.   While IDPR cited the American Psychological Association as the basis for their sanctions against plaintiff Green, the APA after review the matter chose to take no action, while the National Register, which did not review the licensing action accepted Illinois' false allegations without investigation.

35.   Judicial Notice is hereby made of former Illinois Gov. George Ryan's speech of January 11, 2003. In that speech, he issued a moratorium on the death penalty, commuted three death sentences, and pardoned 14 others because of "flaws in our (legal) system" and "breakdowns in the system with police, prosecutors and judges" based largely on race . He stated "The legislature couldn't reform it. The lawmakers won't repeal it." He also stated "the Supreme Court (of Illinois) enacted new discovery rules designed to prevent trials by ambush and to allow for better investigation of cases from the beginning" since the allegations against the plaintiff began. Governor Ryan went on to add, "But shouldn't that mean that if you were tried or sentenced before the rules changed, you ought to get a new trial or sentencing with the new safeguards of the rules?"

11

## COUNT ONE

Conspiracy to violate plaintiff's 14th Amendment Constitutional rights, misprision of official responsibilities, knowingly withholding exculpatory evidence from state and federal courts, knowingly filing false document to a federal agency and purposeful interruption of professional services and contract rights.

For a cause of action against Jim Ryan, Lisa Madigan, Bryan Samuels, Fernando Grillo, IDPR, IDCFS and IDOI, and states as following:

1.  Plaintiff brings this action for redress of violations of his civil rights pursuant to 42 USC 1985. Said statute provides in pertinent part as follows:

    "(a)   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ."

2.  This Court has jurisdiction to redress violations of 42 USC 1985 pursuant to 28 USC 1343(3) and 28 USC 1343 (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

3.  Plaintiff brings this action for redress of violations of his civil rights pursuant to 42 USC 1985.

12

4. Defendants Jim Ryan, Lisa Madigan, individually and in their positions as Illinois Attorney General, and Fernando Grillo and Bryan Samuels, in their positions as Director of IDCFS and Fernando Grillo, individually and in his position as director of IDPR, knowingly violated plaintiff Green's constitutional rights through misprision of their official responsibilities on the basis of race, religion and religious affiliation.

5. All defendants knew or were subsequently informed that plaintiff Green was a Mandated Reporter and that the alleged charges by IDPR prosecutor Mary Ann Benden grew out of his report of a "founded" child abuse report.

6. As such he enjoyed immunity from all alleged acts related.

7. Bryan Samuels in his roles as director of IDCFS had a responsibility to inform Fernando Grillo of IDPR of that immunity.

8. Fernando Grillo knew or was subsequently informed that the alleged charges against plaintiff Green were not within the jurisdiction of his department and had authority and responsibility to drop them, or permit a rehearing, none of which he did do.

9. Jim Ryan and Lisa Madigan as Attorney General, knew or should have known all of the above, but chose to act in a legally responsible manner consistent with their prosecution of capital criminal cases based on race.

10. Former Governor George Ryan was quoted as saying January 11, 2003 that neither he, the courts nor the legislature was able to correct a "flawed" state legal system in which prosecutors "ambushed" minority defendants because of their race.

13

11.    In spite of overwhelming evidence of procedural violations by a white prosecutor, complaints and substantiation by the former governor, above named defendants chose to do nothing in violation of their official responsibilities and protection of the plaintiff's constitutional rights to due process and protection of his rights based on his race.

12.    In matter of fact, defendants did more than nothing. Despite evidence of criminal breach of law, ethics and statute, defendants continued to put the entire weight of the Illinois legal system against the plaintiff's due process rights to obstruct his ability to legally fight and find redress to his due process rights.

13.    In doing so, defendants knowingly withheld exculpatory evidence from state and federal courts, knowing filed false documentation to USDHHS, a federal agency with the intentional and purposeful intended to interrupt professional services and contract rights for both the ability of local insurance reimbursement and federal Medicare-Medicaid reimbursement for both clients, staff and corporate entities of plaintiff Green.

14.    Further, the above named defendant's knowing collaborated in the violation of the plaintiff's constitutional protections against double jeopardy, by knowing sharing false documentation that they knew would result in unfair denial of credentialing in the states of Wisconsin, and Indiana, as well as all other U.S. states and territories.

15.    Lisa Madigan and Jim Ryan, as Illinois Attorney General preceding her, knowingly conspired with state officials in the Department of Children and Family Services, Professional Regulation and Insurance and solicited the cooperation of BCBS by filing knowingly file false documents before the Administrative Review

14

Court, Circuit Court, Illinois Appellate Court and the Illinois Supreme Court state

businesses to ignore the laws and statues of Illinois to justify white and

government businesses not to do business with plaintiff Green.

16. Despite political and legal support for the state prosecutors by the Illinois Attorney

General, defendants Grillo, Samuels and Manna, knew or were put on notice of

violations by Governor Ryan's speech and had a personal and professional duty to

address these matters.

17. Under the knowing direction of Madigan and Ryan, IDPR presented knowingly

false documentation to USDHHS, and Wisconsin, Indiana, the American

Psychological Association and the National Register with the intent to slander,

libel, defame and deny plaintiff Green his rights of employment under law in

knowing violation of his right to due process as a clinical psychologist, a citizen of

Illinois and a citizen of the United States.

18. This continued an ongoing conspiracy where the Madigan and Ryan intentionally

ignored white corporate and criminal violators to unwarrantedly and selectively

pursue black violent criminal suspects. These actions placed additional weight on

the federal government and the local U.S. attorney's office which had to assume

the burden of state prosecutorial responsibilities for white, white color felons in

addition to the additional responsibilities created by Home Security.


WHEREFORE, THE PLAINTIFFS seek the following:

A. An order compelling IDPR return the license of Dr. Green to active status with no

notice of incumbrance

15

B.   Issue an order commanding the U.S. Attorney's office to review all Illinois state investigations over the past 10 years to identify where prosecution was deferred for white suspects on official order of the Illinois Attorney General.

C.   Grant plaintiff's damages in the amount of 10 times the plaintiffs highest year of income, and an equal amount for each client of record and staff member of record from defendants Lisa Madigan, Jim Ryan, Fernando Grillo, Bryan Samuels and Deidre K. Manna as director IDOI..

D.   Grant an order for preferential rights for all future child care contracts let by the Department of Children and Family Services for five years to Associated Psychological Services, Psychological Solutions, and Dr. Theophilus Green.

Theophilus Green

## COUNT TWO

Conspiracy to Selectively Enforce State Law Based on Race, Religion and Religious Affiliation,

For a cause of action against Jim Ryan, Lisa Madigan, Bryan Samuels, Fernando Grillo, Francis Cardinal George and the U.S. Conference of Catholic Bishops, the plaintiffs re-allege paragraphs 1 thru 18 of Count One and for Count Two states as follows:

16

19.     With the knowing approval of Lisa Madigan and Jim Ryan, staffers in the office of

        the Illinois Attorney General and the Illinois Department of Children and Family

        Services selectively enforced the laws of professional licensure, and compliance

        with state and federal law for mandated reports of child abuse.

20.     This selective enforcement was based on race, religion, and religious affiliation or

        the lack of.  Defendant's Madigan and Ryan  knew or should have known of 55

        years of child abuse before  admissions by Cardinal Joseph George and the U.S.

        Conference of Bishops and were bound by law to act on those admissions which

        they did not do.

21.     In June, 2002 and on February 27, 2004, the USCCB and Cardinal George,

        respectively, admitted over 55 years of child sexual abuse which had not been

        reported to any state agency.

22.     This requirement was a condition for professional licensing by all professionals,

        doctors, lawyers, teachers,  healthcare workers, and childcare workers under the

        supervision and employ of the Archdiocese of Chicago and the U.S. Conference of

        Catholic Bishops by state law.

23.     Neither Madigan, Ryan, Grillo, or Samuels sought to document which

        professionals were in violation of the Mandated Reporter Law, based on those

        public admissions. Neither sought to suspend or revoke the Chicago Archdiocese

17

as an admitted child abuser from state contracts, nor did they require employees of church affiliated schools, hospitals and child care groups to report past violations.

24. Neither Madigan or Ryan sought to revoke the charitable tax exempt status of either entity as admitted child abusers, nor sought to seek what other reports had not been filed.

25. Neither Madigan or Ryan sought to revoke ongoing state child care contracts following those admissions of abuse.

26. Because plaintiff Green was not white, not Catholic, and not a member of the Catholic religion, Samuels and Grillo actively acted to deny plaintiff Green professional licensure, and continued to the support the most severe disciplinary sentence in the history of the state. Both Madigan and Ryan continued to deny plaintiff Green re-licensure and actively worked to deny him licensure which would allow him to compete for state childcare contracts. Both Madigan and Ryan, as Attorney General, knew the allegations against plaintiff Green lacked substance under Illinois law.

27. Their actions continued a pattern and practice of IDPR removing professional licensure upon incarceration for unrelated criminal offenses of Americans of African descent, then refusing to return them after sentence completion.

28. All licensure actions were taken independently in retaliation for perjured testimony, without a complaining witness, without a formal charge, without patient

18

harm, in knowing violation of Mandated Reporter immunity protections and supported by two separate political administrations with different parties.

29. By contrast, the office of Illinois Attorney General, IDPR, nor DCFS has yet to determine any punishments for the hundreds of professionals who admittedly and knowingly withheld more than 50 years of mandated reporter compliance, because of their race, predominantly, white, their religion, Catholic and their religious affiliation, Archdiocese of Chicago, as agent of the U.S. Conference of Catholic Bishops.

WHEREFORE PLAINTIFFS SEEK THE FOLLOWING:

A. An order to compel IDPR, DCFS and the Illinois Attorney General's office to apply all laws equally.

B. To command the Archdiocese of Chicago and USCCB to report all names of persons on staff for the last 55 years who knew or should have known of child abuse contained in their public admissions.

C. An order to IDPR to issue the appropriate professional censure for each of those individuals by name.

D. To compel IDPR to return all licences currently in their possession and withheld for unrelated professional acts during completion of criminal sentencing.

19

E.   To compel the Archdiocese of Chicago and USCCB to surrender all state, local and federal funds contracted or awarded during the knowing period of child abuse. As these funds would not have been awarded if knowledge of ongoing child abuse had been made public in all states and territories in which USCCB and its agents benefitted USCCB unfairly enriched itself through the lack of licensure of plaintiffs like Dr. Green who did comply with all state and federal laws.

F.   Award damages in the amount of ten times the highest personal income of each individual known to have been abused, or whose abuse could have been interrupted but for actions by Cardinal George, the Archdiocese of Chicago and USCCB and was a patient of Dr. Theophilus Green, Psychological Solutions, or Associated Psychological Services.

G.   To award plaintiff Green as fair compensation, 30 percent of all monies collected from 50 years of unfairly awarded contracts from USDHHS Medicare-Medicaid funds, U.S. Department of Education contracts and awards to the USCCB and the Chicago Archdiocese in compensation for all injury during the ongoing period of violation in Illinois in all U.S. states and territories. This conspiracy to defraud denied Dr. Green and the other plaintiffs their constitutional rights for healthcare services and employment.

20

Theophilus Green

## COUNT THREE

Purposeful negligence and conspiracy to direct state and federal contracts, conspiracy to ignore Mandated Reporter laws, conspiracy to use professional documents to justify false reimbursement by USDHHS for Medicare and Medicaid reimbursements and conspiracy to defraud by purposeful professional slander and libel

For a cause of action against Jim Ryan, Lisa Madigan, Bryan Samuels, Fernando Grillo, Francis Cardinal George and the U.S. Conference of Catholic Bishops, the plaintiffs re-allege paragraphs 1 thru 18 of Count One and 19 thru 29 of Count Two and for Count Three state as follows:

30.     Cardinal Joseph George, individually and as CEO of the Archdiocese of Chicago and an agent of USCCB, knowing withheld 50 years of child sexual abuse in an ongoing conspiracy and collaboration with Bryan Samuels of DCFS to deny plaintiff Green contract rights in all states or territories to purposely deny the plaintiff and members of his race DCFS contracts. Both knew the Chicago Diocese would not have been entitled to state contracts if admissions of knowing child abuse had been provided. USCCB unlawfully withheld that knowledge to deny plaintiff Green and members of his race the right to compete for those contracts

21

through benefit of the Cardinal's race, white, religion, Catholic and religious affiliation, agents of USCCB..

31.     The Chicago Archdiocese further refused to accept employment applications for plaintiff Green, and members of his staff based on their race, religion, professional education and licensure state which they knew at the time. Further complicating his employment was knowledge from at least two conversations between Cardinal George and Samuels in which plaintiff Green's licensure as a Mandated Reporter was discussed.

32.     The denial of employment was specific and purposeful with the intention of closing all non-Catholic professionals likely to comply with state Mandated Reporter Child Abuse requirements which both Cardinal George and Samuels knew would threaten their right to continued contracts.

33.     Further, Cardinal George conspired with Bryan Samuels and DCFS to design services to justify continuation of Chicago Archdiocese control of Maryville Academy in violation of community needs.

34.     In addition, Samuels knew or was informed that state Medicare-Medicaid reporting policies had been used to contribute to the closing of Forest Psychiatric Hospital to enable the Archdiocese of Chicago to assume control of that facility because of their religion and religious affiliation.

22

35.     Despite a growing need for residential placements for black and minority children at Maryville Academy, and the additional resources created by the assumption of Forest Hospital Facilities, Cardinal George and Bryan Samuels conspired to ignore reports of child abuse, to fail to compel or require those with knowledge of abuse to report abuse, to justify continued differential direction of state and federal contract services to the expanded facilities.

36.     In furtherance of this conspiracy, Samuels closed all possibility to black and minority childcare professionals by redesigning the purpose of Maryville Academy from a residential center to a school to avoid future conflicts with news reports criticizing the quality of childcare services by the Archdiocese of Chicago.

37.     This conspiracy was in direct opposition to the needs of the surrounding community for residential placement. Further, these actions were in violation of Samuels official responsibilities which required him to investigate and prosecute failure to comply with the Illinois Abused and Neglected Children Act of Mandated Reporters and report all violations to IDPR.

38.     Neither Bryan Samuels nor Cardinal George, nor USCCB nor any staff of DCFS have reported any violations of Mandated Reporter responsibilities to IDPR since Cardinal George or USCCB have admitted long standing child sexual abuse violations. This failure to report includes hospitals, educational institutions, child care facilities in Illinois or anywhere in the country.

23

39. Neither Ryan nor Madigan, have prosecuted any Mandated Reporters in the state but the plaintiff in this action, Dr. Green.

40. The ongoing conspiracy with Cardinal George as CEO of the Archdiocese of Chicago and as agent of USCCB and Samuels worked to remove plaintiff Green as a protector of children. This conspiracy acted to replace plaintiff Green's services as a known reporter of child abuse with the Archdiocese of Chicago and agents of the U.S. Conference of Catholic Bishops who withheld long standing reports of child abusers and were admittedly incompetent to manage child care services.

41. This conspiracy knowingly worked to expose the plaintiff's clients to known sexual predators in hospital schools and child care services and to avoid identifying those professionals who knew of abuse but chose not to report it, or whose reports could have prevented future abuse.

42. This conspiracy allowed a religious leader outside the influence of state and federal law to have a greater influence on state and federal residents than state officials, and substantiated the right of Cardinal George and agents of USCCB to continue using race, religion, affiliation of religion and political influence to avoid compliance with state law and procedures as regards child sexual abuse and neglect.

43. Further, Cardinal George and USCCB knowingly conspired to withhold evidence of child abuse and violations of Mandated Reporter responsibilities to justify

24

continuation of a local and state Illinois charitable tax exempt status. Neither the

Archdiocese of Chicago nor USCCB would have been entitled to this tax exempt

status had Samuels, acting on evidence of child sexual abuse charges in his

possession, performed his official responsibilities without emphasis on race,

religion and religious affiliation.

44. The state of Illinois along with the states of Indiana, Wisconsin, and all remaining

states and territories in the union now sanction Dr. Green based on allegations by

IDPR and known to be false. These false allegations nevertheless sustained the

right of agents of USCCB in Indiana and Wisconsin to justify the direction of state

contracts in those states to agents of USCCB.

45. IDPR under the direction of other defendants knowingly submitted false

allegations were transmitted to all the Attorney Generals in all U.S. states and

territories to deny plaintiff Green any right to his employment and denial of future

professional services in other states based on his professional education.

46. This conspiracy worked to permit the USCCB, to retain rights to federal charitable

tax exempt status under 501(3)(c) of the U.S. Tax code in every state in which Dr.

Green's license was compromised and unfairly receive state and federal contracts

which plaintiff Green would have been entitled.

47. This conspiracy, further allowed ll professionals working for the Chicago

Archdiocese and as agents of USCCB in Illinois and other U.S. states and

territories to receive Medicare and Medicaid funds to which they were not entitled if their licensure were disciplined for failure to comply with mandated reporter responsibilities.

48.     This conspiracy also acted to deny the protection of children facing abuse by a professional in compliance with the Abused and Neglected Child abuse acts in every state and allowed knowing violators to go un-investigated and unreported and as was the case with many Catholic priests, undisciplined.

49.     While this conspiracy of government and church was initiated to protect agents of USCCB, who unlike the leadership of the plaintiff companies were not Catholic, they also served to justify thousands of other reports by individuals of other religions, faiths, races and religious affiliation to avoid discipline.

50.     This conspiracy allowed the plaintiff and his staff to who were compliant of mandated reporter responsibilities for child abuse and neglect, but who were black, and largely non-Catholic to be censured for lifetime, as professionals and employees because of their lack of race, not white, the religion of their leadership, and the religious affiliation of their leadership. They were with the nodding approval of the Illinois Attorney General punished for their compliance with state and federal laws to protect children.


WHEREFORE plaintiffs seek the following relief:

26

A.   Issue an order to direct IDPR to provide USDHHS all names censured for failing to comply with Mandated Reporter laws to have them removed from Medicare-Medicaid Provider lists.

B.   Issue an order to the Inspector General of USDHHS to restore the Medicaid-Medicare licensure of plaintiff Green without evidence of incumbrance.

C.   Issue an order to direct Cardinal George, the Archdiocese of Chicago and U.S. Conference of Catholic Bishops to return all Medicare-Medicaid funds paid during the period of knowing child abuse and the period they would not have been entitled to contract benefits if such ongoing abuse had been known.

D.   Issue an order to the Attorney Generals of Illinois, Wisconsin and Indiana and all other U.S. states and territories to begin the assessment of the amount of funds unlawfully directed to agents of USCCB, the lost tax revenue because of unlawful charitable tax exemptions and to determine how best to begin reclaiming those funds.

E.   Issue an order to restrict Cardinal George, the Archdiocese of Chicago and U.S. Conference of Catholic Bishops from application for Medicare-Medicaid benefits for 25 years.

27

F.   Issue an order to the Internal Revenue Service to remove the 501(3)(c) charitable tax exemption from the Archdiocese of Chicago and U.S. Conference of Catholic Bishops.

G.   Issue an order to the IRS to determine how much in lost funds were uncollected because of charitable tax exemptions which would not been granted had ongoing child sexual abuse been known.

H.   Award damages to all plaintiff staff in the amount of 20 times their highest income.

I.   Award plaintiff Green, 30 percent of all funds collected qui tam from Attorney Generals collected back Medicare-Medicaid funds from USCCB in Illinois, Wisconsin, and Indiana and all other U.S. states and territories.

J.   Award plaintiff Green, 30 percent of all funds collected qui tam from IRS charitable tax exemptions to which they were not entitled.

Theophilus Green

COUNT FOUR

Negligence, Slander, Libel, and Conspiracy to Withhold Contract Benefits and Conspiracy to Breach a lawful Contract.

28

For a cause of action against Jim Ryan, Lisa Madigan, Fernando Grillo, Ray McCaskey, BCBS, Judy Hall and the National Register, the plaintiffs re-allege paragraphs 1 thru 18 of Count One and 19 thru 29 of Count Two and 20 thru 50 of Count Three and for Count Four states as follows:

51. Defendants knew or during the process of previous litigation had opportunity to learn that all plaintiff's actions under IDPR complaint 93-5867 enjoyed unqualified immunity as a Mandated Reporter under the Illinois Abused and Child Reporting Act.

52. All defendants knew they were unlawful to delay or withhold benefits from his services or reporting violations they knew to be false in nature.

53. BCBS, Judy Hall, and National Register had notice of ongoing legal inconsistencies in Illinois through news reports and direct communication with the plaintiffs.

54. Further, based on IDPR reports, the Illinois Department of Insurance failed to address ongoing matters of note with the plaintiff based on libelous verbal communications within state departments that caused them to undervalue the validity of his complaint.

55. Both knew or should have known of ongoing legal violations and evidence of fraud by governor, plaintiff and litigation.

56.  Yet despite these notices, BCBC acted to slander, libel and malign the plaintiff professionals reputation through publishing of false documentation that they knew or should have known was false at the time of publication.

57.  Ray McCaskey personally authorized the withholding of $580,000 in provider reimbursements despite information in his possession that the allegations against plaintiff Green were unfounded and covered by immunity.

58.  McCaskey knew, was later informed, should have known or had a contract required to investigate whether the Illinois credentialing actions against plaintiff Green had a basis in fact or law.

59.  As his was the only censure based on Mandated Reporter immunity violations, and as no other Illinois credentialing violations resulted from Cardinal George's admissions of 50 years of child sexual abuse, a reasonable man in McCaskey's position would have determined an inequity based on race, religion and religious affiliation.

60.  Despite that knowledge, McCaskey continued to withhold, divert and ignore all plaintiff requests for provider reimbursements and knowing joined the conspirators in denying plaintiff Green and his clients benefits to which they were entitled.

61.  Despite numerous communications, Judy Hall failed to investigate plaintiff green's allegation.

30

62. Unlike the American Psychological Association, which withheld action until a final determination, BCBS withheld $580,000 in authorized billing services and the National Register acted precipitously to defame the professional with insurers nationwide.

63. At no time when BCBS or the National Register acted was litigation completed and thus they were premature and negligent in compromising plaintiff Green's rights because, on the basis of state residency alone, there was reason to conclude that race, if not religion and religious affiliation, were a legitimate.

64. Both BCBS and National Register owed plaintiff Green the opportunity to a hearing on these matters because of his race and state of origin and both parties were negligent in failing to do so.

65. Both BCBS and Judy Hall in acting precipitously and negligently joined the conspiracy of Samuels and Cardinal George to deny plaintiff Green benefits based on race, religion and religious affiliation.

66. Judy Hall personally reviewed all relevant documents and personally instructed the board of the National Register to ignore the plaintiff's concerns.

67. The director of Illinois Department of Insurance personally reviewed the Plaintiff's documents and personally authorized his department to ignore them.


WHEREFORE, PLAINTIFFS pray of this honorable court the following:

31

A.  Issue an order to reinstate plaintiff Green's National Register accreditation for lifetime.

B.  Notify Illinois Department of Insurance to reopen and appoint an independent third party to review all insurance matters ignored during this period of libel and slander.

C.  Issue an order to compel BCBS to release $580,000 in provider benefits with interest from June, 1993.

D.  As the actions by BCBS were knowing and were a part of a knowing and ongoing conspiracy with Samuels, Cardinal George and agents of USCCB, issue an order to reopen their settlement agreement with the U.S. Dept of Justice for insurance fraud to determine what other violations may exist with specific direction toward USCCB Medicare-Medicaid violations.

E.  Award damages in the amount of 20 times the plaintiff's highest year of income on Judy E. Hall and the National Register for each state and each entity to which it directed libelous documents regarding Dr. Green.

F.  Issue an order to BCBS to reinstate plaintiff Green's provider contracts and assure that those contracts would be in effect for every municipality that BCBS has an agent.

Theophilus Green

Count Five

RICO FRAUD IN VIOLATION OF 18 U.S.C. 1961-1968

For a cause of action against Jim Ryan, Lisa Madigan, Fernando Grillo, Judy Hall and the National

Register, the plaintiffs re-allege paragraphs 1 thru 18 of Count One and 19 thru 29 of Count Two

and 30 thru 50 of Count Three and 51 thru 67 of Count Four and for Count Five states as follows:

68. Bryan Samuels, director of DCFS knowingly communicated with Father George,

the states of Wisconsin and Indiana to further facilitate a violation of constitutional

rights, while withhold knowledge in his possession that the allegations against Dr.

Green were protected by Mandated Reporter Immunity.

69. Cardinal George, as an agent of the USCCB knowingly withheld documentation of

violation of Mandated Reporter laws to state and federal agencies in a conspiracy

with IDPR and DCFS. Each defendant knew that withhold that documentation

would permit continued reimbursement of Medicare-Medicaid provider

reimbursements and other federal education funds which they all knew would not

have authorized except for the withholding of false information on white and

Catholic individuals and those affiliated with USCCB.

70. Samuels and Grillo knew that withhold exculpatory documents regarding plaintiff

Green and refusing to hold reinstatement hearings would deny him benefits under

Medicare and Medicaid nationwide.

33

71.    Each Defendant knew and had an individual responsibility to report and or correct this matter.

72.    All plaintiffs acted in concert with the USCCB to forestall any further complaints that would violate the Catholic church's right to 501(3)(c) charitable tax exemptions and permit DCFS to continue using the Archdiocese of Chicago as a preferred contract vendor despite admissions of child abuse.

73.    Bryan Samuels knowingly withheld reporting vital documents to IDPR and USDHHS to justify the continuation of violations against Dr. Green with which would knowingly benefit USCCB in Wisconsin and Indiana, and with every state and territory in the union.


WHEREFORE PLAINTIFFS PRAY of this honorable court:

A.    Issue an order to reinstate for lifetime plaintiff's professional license without evidence of encumbrance on Illinois, Wisconsin, Indiana and all other U.S. states and territories.

B.    Issue an order compelling the National Register, Judy Hall individually, Fernando Grillo, Cardinal George, Bryan Samuels, Lisa Madigan and Jim Ryan award plaintiff Green 20 times the plaintiff's highest income. This figure is to be for each state and territory who received false documents and communications which would have compromised plaintiff Green future employability.

34

C.   Issue an order compelling USDHHS restore the plaintiff's Medicare-medicaid license without evidence of encumbrance.

D.   Issue an order barring all agents and parties from receiving Medicare-Medicaid monies from agents of the USCCB.

E.   Issue an order that USCCB return of all state and federal and local funds received during the 50 years of abuse with interest.

F.   Award the plaintiff Green 30 percent of all monies collected from past awards to agents of the USCCB in all states and territories in which his reputation and employability had been compromised to the benefit of USCCB.

G.   Issue an order to re-license all Medicare and Medicaid licenses of all agents of USCCB, including churches, hospitals, schools, both secondary and higher educational institutions and child welfare agencies.

H.   Remove all charitable tax exemptions from USCCB for a period of 25 years.

Theophilus Green

## COUNT SIX

For a cause of action against Jim Ryan, Lisa Madigan, the plaintiffs re-allege paragraphs 1 thru 18 of Count One and paragraphs of 19 thru 29 of Count Two and paragraphs 30 thru 50 of Count Three and paragraphs 51 thru 67of Count Four, paragraphs 68 to 73 of Count Five and for Count Six states as follows:

74.     Defendant Lisa Madigan conspired with counsel under her direction to violate the Illinois Code of Civil Procedures and make false applications in a lower court, then intentionally shared false documentation to federal agencies to justify their lack of response and investigation of a matter of national security.

WHEREFORE, PLAINTIFFS seek an order compel Jim Ryan, Lisa Madigan, be present with the plaintiffs at an en camera hearing with all other relevant official parties to address their participation or lack of in addressing matters of National Security regarding the plaintiff, clients and staff.

Theophilus Green
203 N. LaSalle, Ste 2100
Chicago, IL 60606
312-697-4784

36

JS 44 (Rev. 3/99)  CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS** FILED FOR DOCKETING ED-7

Theophilus Green, Assoc, Vyyl Sewires, Psychological Solutions sc. Water Christian Staff

**DEFENDANTS**

Francis Cardinal George, USDHHS

**(b)** County of Residence of First Listed Plaintiff Cook CLERK
(EXCEPT IN U.S. PLAINTIFF CASES) DISTRICT COURT

County of Residence of First Listed _____ Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

040 5813 DOCKETED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Dr. Green
203 N. Casile St. 2100
Chicago, Ill 60601

Attorney's (If Known) _____ ko
USCCB
3211 Fort, DeNE
Washington DC 20017-1194

SEP 07 2004

JUDGE MAROVICH

MAGISTRATE JUDGE NOLAN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Inj. / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights / ☐ 555 Prison Condition | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. This case
☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case _____, previously dismissed by Judge _____

DATE 3 Sept 04

SIGNATURE OF ATTORNEY OF RECORD

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

ED-7
FILED FOR DOCKETING
04 SEP -3 PM 1:41
CLERK
U.S. DISTRICT COURT

**DOCKETED**

SEP 0 7 2004

Case Number: 04C 5813

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Theophilus Green, Associated Psychological Svcs
Psychological Solutions, PC + related Clients & Staff

JUDGE MAROVICH

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME _Theophilus Green_ | NAME MAGISTRATE JUDGE NOLAN |
| FIRM | FIRM |
| STREET ADDRESS _203 N. CASalle, Ste 2100_ | STREET ADDRESS |
| CITY/STATE/ZIP _Chicago Ill_ | CITY/STATE/ZIP |
| TELEPHONE NUMBER _312-697-4784_ / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS _trtgreen @ yaho.com_ | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |